UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELSY RUSSELL, as Administrator of the Estate of Keith Russell and KELSY RUSSELL, individually,

Plaintiff,

-against-

WESTCHESTER COUNTY, *et al,*

Defendants.

7:25-CV-2014 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Kelsy Russell ("Plaintiff"), individually and as Administrator of the Estate of Keith Russell ("Russell" or "Decedent"), brings this action against Westchester County, Wellpath LLC, New York Correct Care Solutions Medical Services, P.C., and various correctional and medical personnel. ("Compl.," ECF No. 1.) Plaintiff asserts nine causes of action, including federal claims under 42 U.S.C. § 1983 ("Section 1983"), the Americans with Disabilities Act, and the Rehabilitation Act, as well as state-law claims sounding in negligence, wrongful death, conscious pain and suffering, and negligent retention, supervision, and discipline. Presently before the Court are two motions to dismiss: one filed by Westchester County and the individual correctional defendants (the "County Defendants"), and one filed by Wellpath LLC, New York Correct Care Solutions Medical Services, P.C., and the individual Wellpath medical defendants (the "Wellpath Defendants," and together with the County Defendants, the "Moving Defendants"). (ECF Nos. 59, 62.)

For the reasons set forth below, the Moving Defendants' motions are granted as to Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims against the Moving Defendants.

## FACTUAL BACKGROUND

The following facts are drawn from the Complaint and are assumed to be true for the purposes of resolving the pending motions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On or about February 20, 2023, Keith Russell was allegedly arrested on the street by the NYPD in conjunction with the DEA as the arresting agency in Manhattan on federal nonviolent, non-gang related charges. (Compl. ¶ 30.) The following day, on or about February 21, 2023 at approximately 6:33 p.m., Russell was allegedly a patient at Bellevue Hospital in New York City, where he was administered methadone due to his active fentanyl withdrawal and opioid withdrawal diagnosis. (*Id.* ¶ 31.) It was thereafter determined that Russell would not be brought to central booking but rather transported to Westchester where he would be admitted to WCJ as a pretrial detainee to await prosecution by the Southern District of New York. (*Id.* ¶ 32.)

At intake, the DOC Staff portion of the Mental Health Referral Form was allegedly filled out by C.O. Manganello on February 21, 2023 at 9:05 p.m., stating that Russell was referred to mental health services after informing staff that he was previously on withdrawal medication and currently exhibiting fentanyl and opioid withdrawal symptoms. (*Id.* ¶ 35.) C.O. Manganello indicated that he notified supervisor C.O. "211" and NP Arancheril at 9:10 p.m. (*Id.*) The Intake Screening Questionnaire likewise allegedly ordered a mental health referral on February 21, 2023 at 9:08 p.m. due to Russell's fentanyl and opioid withdrawal symptoms, which was supposed to trigger an immediate referral to a Medical Service Provider, and was signed by C.O. Manganello, Sgt. Antoine, and NP Arancheril. (*Id.* ¶ 36.) Plaintiff alleges that despite the form stating that immediate action needed to be taken, it was not until 2:55 a.m. on February 22, 2023, nearly six hours later, that Nurse Jalloh checked off the general population box and cleared Russell for general population. (*Id.* ¶ 39.)

The Suicide Prevention Screening form was allegedly filled out by C.O. Prunier, not a medical or mental health staff member, who on February 22, 2023 at 12:28 a.m. marked that Russell had a history of opioid drug use but did not record when the drug was last used, even though that information was required by the form and protocol. (*Id.* ¶ 37.) Despite marking Russell's opioid usage, C.O. Prunier allegedly made the determination that Russell was a non-emergency medical and mental health detainee, without any further mental health referral or consultation. (*Id.*)

At approximately 2:10 a.m, on February 22, 2023, Nurse Jalloh allegedly conducted a DSM-5 Opioid Screening Interview on which Russell scored an eleven out of eleven, indicating severe opioid use disorder, and documented Russell's propensity for withdrawal syndromes should he be unable to use opioids. (*Id.* ¶ 41.) Sgt. Jones was subsequently listed as the supervisor who endorsed the general population decision and assigned Russell to housing at 3NE-21 at 3:00 a.m. (*Id.* ¶ 40.) Plaintiff alleges that despite defendants having knowledge that Russell had a drug addiction and potential psychosis and/or suicidal ideation, Defendants failed to place him on suicide watch, and Russell was assigned unguarded and alone to general population. (*Id.* ¶¶ 46-47.)

On February 23, 2023 at 4:27 a.m., Nurse Bishop allegedly went to administer medication to Russell in his cell and within eleven minutes, at 4:38 a.m., left the post completely without any further monitoring. (*Id.* ¶ 51.) At approximately 10:03 a.m., Russell allegedly called his wife Kelsy Russell and told her that he was not feeling well and that something was not right, explaining that a nurse had given him medication he did not know and that he really was not feeling well. (*Id.* ¶ 56.) Russell was thereafter secured in his cell at 10:23 a.m. (*Id.* ¶ 57.)

At approximately 3:00 p.m., the time of shift change for the WCJ Correction Officers, officers allegedly went to Russell's cell to administer medication, and a Signal 3 security code was called. (*Id.* ¶¶ 63-64, 74.) Russell was allegedly found with a white string around his neck, though Plaintiff acknowledges that the various records contain conflicting descriptions of his position and the nature of the ligature. (*Id.* ¶¶ 64-68.) Narcan was allegedly administered, and CPR commenced, with conflicting records as to the number of Narcan doses administered and the time of EMS arrival. (*Id.* ¶¶ 70-71.) Russell was allegedly transported out of the facility at approximately 3:38 p.m. and was thereafter admitted at Westchester Medical Center ("WMC"), where he remained until he was pronounced dead on March 10, 2023, having gone into cardiac arrest on March 6, 2023 and been diagnosed with an anoxic brain injury on March 9, 2023. (*Id.* ¶¶ 77, 90.)

Based on the foregoing, Plaintiff asserts nine causes of action. (*Id.* ¶¶ 105-180.) The two federal causes of action allege deliberate indifference under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 and violations of the Americans with Disabilities Act and the Rehabilitation Act. (*Id.* ¶¶ 105-117, 164-171.) The seven state-law causes of action assert two claims for negligence, as well as claims for negligent infliction of emotional distress, wrongful death, conscious pain and suffering, loss of familial association, and negligent retention, supervision, and discipline. (*Id.* ¶¶ 118-163, 172-180.)

**PROCEDURAL HISTORY**

Plaintiff commenced this action on March 10, 2025. (ECF No. 1.) On February 10, 2026, the County Defendants filed their motion to dismiss the Complaint and memorandum of law in support thereof. (Cnty. Dfts. Mot. & Mem., ECF Nos. 59-61.) The Wellpath Defendants filed their motion to dismiss and memorandum of law in support. (Wellpath Dfts. Mot. & Mem., ECF Nos. 62, 64.) The Wellpath Defendants and County Defendants subsequently filed reply memoranda in

further support of their motions. (Wellpath Dfts. Reply & Cnty. Dfts. Reply, ECF Nos. 65–66.) Plaintiff thereafter filed her opposition to the pending motions to dismiss. (Pltf. Opp., ECF No. 67.)

Defendants Westchester County Health Care Corporation, Dr. DeLorenzo, and Dr. Chandy separately moved to dismiss the claims against them. By Amended Order dated March 10, 2026, the Court granted that motion, dismissed all claims against those defendants with prejudice, reinstated the action as against Dr. Park, and clarified that the motions to dismiss filed by the remaining defendants remain pending before the Court. (ECF No. 71.) Because no motion by Dr. Park is presently before the Court, this Opinion and Order does not resolve any claims asserted against Dr. Park.

## LEGAL STANDARDS

### I. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. While the district court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, it is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents

that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether a plaintiff has pled sufficient facts to nudge their claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**II. Section 1983 Claims**

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)). "To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights." *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011) (citing *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (per curiam)); *see also Ross v. Westchester Cnty. Jail*, 2012 WL 86467, at *9 (S.D.N.Y. Jan. 11, 2012). A defendant's conduct must therefore be a proximate cause of the claimed violation in order to find that the individual defendant deprived the plaintiff of his constitutional rights. *Ross*, 2012 WL 86467, at *9 (citing *Martinez v. California*, 444 U.S. 277, 285 (1980)). Additionally, a plaintiff seeking monetary damages against the defendant must show personal involvement on the part of the defendant in the alleged constitutional deprivation as a prerequisite to recovery under § 1983. *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) (citing *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006).

## III. ADA and Rehabilitation Act

Title II of the Americans with Disabilities Act ("ADA") provides that no qualified individual with a disability shall, by reason of that disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or otherwise be subjected to discrimination. 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly prohibits disability discrimination by entities receiving federal financial assistance. 29 U.S.C. § 794(a). The standards governing ADA and Rehabilitation Act claims are generally the same. *McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

To state a claim under either statute, a plaintiff must plausibly allege that: (1) he was a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability. *Id*. Allegations of negligent or inadequate medical treatment, standing alone, do not state a claim under either the ADA or the Rehabilitation Act. *Elbert v. New York State Department of Correctional Services*, 751 F. Supp. 2d 590, 595-96 (S.D.N.Y. 2010).

## IV. Supplemental Jurisdiction

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state-law claims if it has dismissed all claims over which it has original jurisdiction. In determining whether to retain jurisdiction, courts consider the values of judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Where all federal claims are dismissed before trial, the balance of these factors ordinarily favors declining to exercise supplemental jurisdiction over the remaining state-law claims. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).

## DISCUSSION

Defendants move to dismiss the Complaint on several grounds. The County Defendants argue that Plaintiff fails to state a claim for deliberate indifference under the Fourteenth Amendment as to the individually named correction officers, that Plaintiff's state law claims are time-barred under New York General Municipal Law § 50-i, that Plaintiff fails to state a wrongful death claim, that Plaintiff fails to state a claim under the Americans with Disabilities Act and Rehabilitation Act, and that Plaintiff fails to adequately plead *Monell* liability against the County. (Cnty. Defs.' Mem. at 1-2.)

The Wellpath Defendants separately argue that Plaintiff fails to state a claim for deliberate indifference as to the individually named medical defendants, that Plaintiff fails to adequately plead entity liability, that Plaintiff's negligence and medical malpractice claims must be dismissed for failure to plead sufficient defendant-specific facts, and that all claims against Wellpath are barred by the injunction issued by the United States Bankruptcy Court for the Southern District of Texas. (Wellpath Defs.' Mem. at 1-2.)

The Court first addresses Plaintiff's federal claims asserted against the Moving Defendants: the Fourteenth Amendment deliberate indifference claim against the individual County and Wellpath defendants, any § 1983 entity liability claims against Westchester County, Wellpath LLC, and NYCCS, and Plaintiff's ADA/Rehabilitation Act claim.[1] Because the Court dismisses all federal claims against the Moving Defendants, it declines to exercise supplemental jurisdiction over the remaining state-law claims against the Moving Defendants.

[1] Because no motion by Dr. Park is presently before the Court, this Opinion and Order does not resolve any claims asserted against Dr. Park.

## I. 42 U.S.C. § 1983: Fourteenth Amendment

Because Keith Russell was a pretrial detainee at the time of the alleged events, his deliberate indifference claim is governed by the Fourteenth Amendment Due Process Clause rather than the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

To state a Fourteenth Amendment deliberate indifference claim, a plaintiff must plausibly allege: (1) conditions that objectively pose an unreasonable risk of serious damage to health; and (2) that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety. *Vega v. Semple*, 963 F.3d 259, 273-74 (2d Cir. 2020). Although the mens rea standard for pretrial detainees is objective rather than subjective, deliberate indifference still requires more than negligence or a mere disagreement with the course of treatment. *Id.* Individual liability under § 1983 requires personal involvement. *Spavone v. N.Y.S. Dep't of Corr. Servs*., 719 F.3d 127, 135 (2d Cir. 2013). The Court must therefore examine the allegations as to each defendant individually, as group allegations against defendants generally are insufficient unless the Complaint alleges facts showing what each defendant personally did or failed to do. *Palm v. Brooks*, No. 22-cv-9729 (VB), 2024 WL 1908388, at *8 (S.D.N.Y. May 1, 2024).

### A. Claims Against Westchester County and Defendants Manganello, Antoine, Prunier, Jones, Losco, Feliciano, Santora, Spaulding, Gibson, Rzemieniewski, McWilliams, and Patterson

#### *1. Defendants Losco, Feliciano, Santora, Gibson, McWilliams, and Patterson*

As an initial matter, Plaintiff's opposition does not meaningfully address the claims against Defendants Losco, Feliciano, Santora, Gibson, McWilliams, and Patterson. Where a plaintiff fails

to address a defendant's arguments in opposition, courts in this Circuit have deemed such claims abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014). Even setting aside abandonment, the Complaint contains no factual allegations of personal involvement as to these six defendants. Their names appear in the caption of the Complaint, but the body of the Complaint does not allege that any of them made any decision, took any action, or failed to take any action with respect to Russell's intake, classification, monitoring, or care. A plaintiff cannot maintain a Section 1983 claim against a defendant whose name appears in the caption but against whom no specific conduct is alleged. *Palm,* 2024 WL 1908388, at *8. Accordingly, Plaintiff's Section 1983 claims against Defendants Losco, Feliciano, Santora, Gibson, McWilliams, and Patterson are dismissed without prejudice.

*2. Defendants Manganello, Antoine, Spaulding, and Rzemieniewski*

Turning to Defendants Manganello, Antoine, Spaulding, and Rzemieniewski, the County Defendants argue that the allegations as to each of these defendants are insufficient to state a plausible deliberate indifference claim. The Court agrees.

As to Defendant Antoine, the only factual allegation in the Complaint is that he countersigned the Intake Screening Questionnaire on February 21, 2023. (Compl. ¶ 36.) Countersigning a form that documented Russell's withdrawal symptoms and ordered a mental-health referral, without more, does not plausibly support an inference that Antoine intentionally or recklessly failed to act in the face of a known excessive risk. Even viewing the facts in the light most favorable to Plaintiff, Antoine's act of signing off on a form that documented Russell's condition and triggered the appropriate referral is inconsistent with a finding of deliberate indifference as he took affirmative steps rather than recklessly failing to act based on the

information he possessed at the time. Accordingly, the claims against Antoine are dismissed without prejudice.

As to Defendant Manganello, the Complaint alleges that he filled out the DOC Staff portion of the Mental Health Referral Form on February 21, 2023 at 9:05 p.m., documenting Russell's withdrawal symptoms and need for mental health services, and that he personally notified his supervisor and NP Arancheril at 9:10 p.m. of the need for immediate action. (Compl. ¶ 35.) Manganello also signed the Intake Screening Questionnaire, which ordered an immediate referral to a Medical Service Provider. (Compl. ¶ 36.) These alleged actions, viewed in the light most favorable to Plaintiff, reflect that Manganello documented Russell's condition and notified supervisory and medical personnel. The fact that Manganello knew of Russell's withdrawal symptoms based on the Mental Health Referral Form and responded by notifying medical staff and ordering the appropriate referral, does not plausibly establish that he intentionally or recklessly disregarded an excessive risk to Russell's health or safety. Accordingly, the § 1983 claim against Manganello is dismissed without prejudice.

As to Defendant Spaulding, Plaintiff alleges that he performed a cell check on Russell at approximately 2:40 p.m. on February 23, 2023 and is documented on camera performing a double look into Russell's cell. (Compl. ¶ 61.) Plaintiff alleges that this double look was suspicious behavior. (Pltf. Opp. at 17.) But performing a cell check, even with a second look, does not plausibly allege deliberate indifference absent facts suggesting that Spaulding observed signs of distress, suicide risk, or self-harm and disregarded them. The Complaint does not sufficiently plead that Spaulding knew or should have known of Russell's alleged risk of suicide or self-harm, or that he recklessly disregarded such a risk as Plaintiff fails to identify any facts that would suggest he knew of that risk (e.g. complaints, observed symptoms, or communications to medical staff).

The inference Plaintiff asks the Court to draw—that a double look during a routine cell check establishes deliberate indifference—is not reasonable on the facts pleaded. Accordingly, Plaintiff's Section 1983 claim against Spaulding is dismissed without prejudice.

As to Defendant Rzemieniewski, the Complaint alleges only that he responded to Russell's cell after the Signal 3 emergency code was called and documented finding Russell with a string around his neck. (Compl. ¶ 64.) As the County Defendants correctly note, Rzemieniewski's only alleged conduct in the Complaint consists of responding to an emergency after it had already occurred and documenting what he observed. The Complaint does not allege that Rzemieniewski had any prior knowledge of Russell's suicide risk, was involved in any intake or classification decision, or had any prior contact with Russell before the emergency was called. Accordingly, the Section 1983 claim against Rzemieniewski is dismissed without prejudice.

*3. Defendants Jones and Prunier*

The Court turns next to Defendants Prunier and Jones. The County Defendants argue that the allegations as to both defendants are insufficient to state a plausible deliberate indifference claim. Upon review of the Complaint, the Court agrees.

As to Defendant Prunier, Plaintiff alleges that C.O. Prunier, who is not a medical or mental health staff member, completed Russell's Suicide Prevention Screening Form on February 22, 2023 at 12:28 a.m., noted Russell's history of opioid drug use, failed to record when the drug was last used as required by the form, in violation of protocol, and determined that Russell was a non-emergency medical and mental health detainee without any further mental health referral or medical consultation. (Compl. ¶ 37.) Accepting these facts as true, Prunier had knowledge of Russell's opioid history at the time he completed the form. However, courts generally distinguish between knowledge of withdrawal, which may establish a serious medical need, and knowledge

of a substantial suicide or self-harm risk. *See Mayo v. Cnty. of Albany*, 357 F. App'x 339 (2d Cir. 2009) (recognizing that knowledge of a detainee's alcohol and heroin withdrawal, absent further information indicating suicidal ideation or another substantial risk of self-harm, is insufficient to establish deliberate indifference to a known risk of suicide.)

While the Complaint alleges that Prunier failed to complete the form as required and designated Russell a non-emergency without medical consultation, it does not sufficiently plead a causal link between Prunier's alleged failures and Russell's alleged risk of suicide or self-harm. The Complaint does not allege that Prunier was aware of any suicidal ideation or self-harm threats beyond the documented opioid withdrawal. Although Prunier's alleged failure to follow protocol may rise to negligence, the Complaint does not plausibly allege that Prunier intentionally or recklessly disregarded a known or obvious substantial risk of suicide or self-harm. Accordingly, the § 1983 claim against Prunier is dismissed without prejudice.

As to Defendant Jones, Plaintiff alleges that Sgt. Jones endorsed the general population placement decision and assigned Russell to cell NJ-3NE-21 alone and unguarded at 3:00 a.m., after RN Jalloh had cleared Russell for general population. (Compl. ¶¶ 39-40, 47.) Jones also signed the Wellpath Initiation Form designating Russell for COWS/CIWA treatment. (Compl. ¶ 38.) Sergeant Jones's endorsement of a placement decision that had already been made and approved by medical staff does not plausibly allege that he intentionally or recklessly failed to act despite knowing, or having reason to know, of an excessive risk to Russell's health or safety. This is consistent with the well-established principle that non-medical correctional officials are generally entitled to rely on the judgment of medical professionals concerning an inmate's care. *See Graham v. Wright*, No. 01 Civ. 9613 (NRB), 2003 WL 22126764, at *1 (S.D.N.Y. Sept. 12, 2003) (recognizing that supervisory officials are "generally entitled to rely on the opinion of

medical staff concerning the proper course of treatment”); *see also Snell v. Neville*, 998 F.3d 474, 498 (1st Cir. 2021) (recognizing that non-medical prison officials are generally justified in relying on the judgment and care of prison medical providers).

The Complaint does not allege that Jones had any basis, independent of the medical staff’s clearance, to override that determination or to conclude that Russell required suicide watch or protective custody. Accordingly, Plaintiff's Section 1983 claims against Jones is dismissed without prejudice.

**B. Claims Against Wellpath and Defendants Arancheril, Montford, Pappadake, Troupe, Bishop, Jalloh, and Ulloa**

*1. Defendants Montford, Pappadake, Troupe, Ulloa*

As an initial matter, Plaintiff’s opposition does not meaningfully address the claims against Defendants Montford, Pappadake, Troupe, and Ulloa. Where a plaintiff fails to address a defendant’s arguments in opposition, courts in this Circuit have deemed such claims abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014). Even setting aside abandonment, the Complaint contains no specific factual allegations tying any of these four defendants to any particular decision, action, or omission with respect to Russell’s intake, screening, treatment, monitoring, or care. Their names appear in the caption of the Complaint, but the body of the Complaint does not allege what role, if any, each of them played in the events giving rise to Russell’s injuries and death. A plaintiff cannot maintain a Section 1983 claim against a defendant whose name appears in the caption but against whom no specific conduct is alleged. *Palm,* 2024 WL 1908388, at *8. Accordingly, Plaintiff’s Section 1983 claim against Defendants Montford, Pappadake, Troupe, and Ulloa are dismissed without prejudice.

2. *Defendants Arancheril, Jalloh, and Bishop*

Under the deliberate indifference standard set forth above, allegations amounting only to negligence or medical malpractice do not rise to the level of a constitutional violation. *Dumel v. Westchester Cnty.*, 656 F. Supp. 3d 454 (S.D.N.Y. 2023).

Plaintiff's claim against Nurse Practitioner Arancheril is based on her participation in Russell's intake screening and her approval of an immediate mental-health referral after being informed that Russell was experiencing opioid withdrawal symptoms. Those allegations do not plausibly support an inference that Arancheril knew or should have known that Russell faced a substantial risk of suicide or self-harm. Rather, they show that she took action in response to the information available to her by approving further mental-health evaluation.

Plaintiff contends that Arancheril was responsible for the approximately six-hour delay before Decedent received a mental health assessment, but the Complaint contains no factual allegations explaining how Arancheril personally caused, contributed to, or recklessly disregarded that delay. Conclusory assertions of responsibility, without supporting factual allegations, are insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

Nor does the Complaint allege that Decedent exhibited suicidal ideation, threatened self-harm, had a prior suicide attempt known to Arancheril, or otherwise presented indicators from which she knew or should have known that he faced a substantial risk of suicide. As noted above, knowledge that a detainee is experiencing withdrawal, without more, does not establish knowledge of a substantial risk of suicide or self-harm. Because the allegations show that Arancheril responded to Decedent's withdrawal symptoms by approving a mental health referral rather than ignoring them, Plaintiff has not plausibly alleged reckless disregard of a known or obvious suicide risk. Accordingly, Plaintiff's Section 1983 claim against Arancheril is dismissed without prejudice.

The Complaint alleges that Jalloh documented severe opioid withdrawal and Decedent's propensity for withdrawal syndromes, but it does not allege that Decedent expressed suicidal ideation, made self-harm threats, had a prior suicide attempt known to Jalloh, or exhibited other specific indicators from which Jalloh knew or should have known of a substantial risk of self-harm. As noted above, knowledge of severe opioid withdrawal, without more, does not plausibly establish knowledge of a substantial suicide risk.

Moreover, even assuming Jalloh participated in the decision to place Decedent in general population, the Complaint simultaneously alleges that he enrolled Decedent in the COWS/CIWA withdrawal protocol, documented his medication-assisted treatment history, and prescribed medication to address his withdrawal symptoms. (Compl. ¶ 38.) Courts have recognized that an outright refusal to provide medically indicated withdrawal treatment may constitute deliberate indifference. *See Foelker v. Outagamie Cnty.*, 394 F.3d 510 (7th Cir. 2005).

Here, however, Plaintiff alleges the opposite — that Jalloh evaluated Decedent, documented his condition, enrolled him in a treatment protocol, and prescribed medication. Those allegations are inconsistent with a claim that Jalloh consciously or recklessly disregarded a substantial risk to Decedent's health. Accordingly, Plaintiff's Section 1983 claim against Jalloh is dismissed without prejudice.

Plaintiff's claim against Registered Nurse Bishop rests on her administration of medication to Decedent and her departure from the housing area approximately eleven minutes later without further monitoring him. These allegations do not plausibly establish deliberate indifference.

As pleaded, Bishop affirmatively provided medical treatment by administering prescribed medication. The Complaint does not allege that she refused treatment, ignored a request for medical assistance, or observed conduct indicating that Decedent was suicidal or otherwise in

imminent danger of self-harm. Plaintiff also references an alleged telephone conversation in which an unidentified nurse purportedly stated that she would "give the medication to him anyways," but the Complaint does not allege that Bishop made that statement or otherwise connect her to that conversation.

To the extent Plaintiff challenges the medication selected, alleges that the medication was inappropriate, or disputes Bishop's decision not to continue monitoring Russell after administering medication, those allegations sound in negligence or medical malpractice rather than deliberate indifference, absent facts showing that Bishop knew or should have known that the medication or lack of monitoring posed an excessive risk of suicide, self-harm, or serious medical injury. Disagreements regarding medications, diagnostic techniques, forms of treatment, the need for specialists, or the timing of medical intervention generally do not state a claim under § 1983. *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Viewed in the light most favorable to Plaintiff, these allegations do not plausibly show that Bishop knew or should have known that Decedent faced an imminent risk of suicide or that she recklessly disregarded such a risk. Accordingly, Plaintiff's § 1983 claim against Bishop is dismissed without prejudice.

## II. *Monell* and Entity Liability Under Section 1983

A municipality may be sued under Section 1983 only "when execution of [the] government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Serv. of the City of N.Y.*, 436 U.S. 658, 694 (1978). Therefore, any Section 1983 claim against a municipal entity must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004).

Courts in this Circuit apply a two-prong test for Section 1983 claims brought against a municipal entity. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). First, the plaintiff

must "prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id.* Second, the plaintiff must establish a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). The simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993). Conclusory allegations that a municipality failed to train and supervise its employees are likewise insufficient to state a *Monell* claim absent supporting factual allegations. *Davis v. City of New York*, No. 07-CV-1395 (RPP), 2008 WL 2511734, at *6 (S.D.N.Y. June 19, 2008).

To the extent Plaintiff asserts Section 1983 *Monell* claims against Westchester County, Wellpath LLC, and New York Correct Care Solutions Medical Services, P.C., those claims fail as pleaded. As to all three entities, the Complaint does not plausibly allege an underlying constitutional violation by any of the individual defendants, and a *Monell* claim cannot lie in the absence of an underlying constitutional violation. *Lockett v. City of Middletown,* No. 19-CV-08255 (PMH), 2021 WL 1092357, at *5 (S.D.N.Y. Mar. 22, 2021). Even setting aside the absence of an underlying violation, the Complaint independently fails to satisfy either prong of the *Monell* test as to any of the three entities.

As to Westchester County, the Complaint does not plausibly allege the existence of a specific municipal policy or custom that caused Russell's alleged injuries. The Complaint's allegations as to the County's institutional failures are largely conclusory, reciting in general terms that the County failed to train, supervise, and discipline its correction staff and failed to implement

adequate suicide prevention and intake screening protocols. The Complaint does not identify a specific formal policy, point to prior similar incidents at WCJ that would support an inference of persistent and widespread practice, or allege facts establishing that any County policymaker was aware of a recurring constitutional deficiency. Plaintiff appears to reserve the right to seek leave to amend to assert a *Monell* claim against the County, but such a reservation is not itself a pleaded claim. Accordingly, any Section 1983 *Monell* claim against Westchester County is dismissed without prejudice.

The same result applies to Wellpath LLC and New York Correct Care Solutions Medical Services, P.C. Wellpath argues that Plaintiff has not explicitly asserted a *Monell*-type entity liability claim against either entity and, in any event, has not pleaded facts satisfying *Monell's* policy-or-custom requirements. (Wellpath Defs.' Mem. at 10.) This Court agrees. To the extent the Complaint can be construed to assert a Section 1983 entity liability against Wellpath LLC or NYCCS, it does not plausibly allege a specific policy, custom, practice, or failure to train that was the direct cause of Russell's alleged constitutional deprivation. The Complaint's institutional allegations as to Wellpath are no less conclusory than those asserted against the County. *Dwares*, 985 F.2d at 100. Accordingly, any Section 1983 entity liability claim against Wellpath LLC or NYCCS is dismissed without prejudice.

## III. ADA and Rehabilitation Act

As set forth above, to state a claim under the ADA or the Rehabilitation Act, Plaintiff must plausibly allege, among other things, that Russell was a qualified individual with a disability and that he was denied access to a service, program, or activity, or otherwise discriminated against, because of that disability. *See McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The County Defendants move to dismiss this cause of action on the grounds that Plaintiff fails to satisfy the first and third elements required to assert a claim under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C.S. § 12131 et seq., or § 504 of the Rehabilitation Act of 1973, 29 U.S.C.S. § 794 et seq. (County Defs.' Mem. at 9.) As to the first element, the County Defendants argue that Plaintiff fails to allege that Decedent's disability affected either his ability to engage in any life activities, major or minor, or his major bodily functions during the relevant time period, as is required to sustain a Title II ADA claim. See *Louis v. N.Y.C. Hous. Auth*., 152 F. Supp. 3d 143, 150 (S.D.N.Y. 2016). The County Defendants further argue that 28 C.F.R. § 35.108(b)(2) does not establish that drug addiction is a qualified disability per se, but rather lists it as one example of a physical or mental impairment which only qualifies as a disability where it substantially limits one or more of the major life activities of such individual. 28 C.F.R. § 35.108(a)(1)(i). Factual allegations as to actual impairment are essential at the motion to dismiss stage. *See Graham v. Macy's Inc.*, 2015 WL 1413643, at *6 (S.D.N.Y. Mar. 23, 2015) (dismissing ADA claim where plaintiff alleged a disability that can in some circumstances qualify as a disability under the ADA but failed to explain how that impairment substantially limits one or more major life activities). The County Defendants further argue that as to the third element, Plaintiff has not identified any specific WCJ service, program, or activity that Russell was denied access to because of his disability. (Cnty. Defs.' Mem. at 9.)

In opposition, Plaintiff argues that Russell's Opioid Use Disorder constitutes a qualifying disability under the ADA and that his severe opioid use disorder substantially limited multiple major life activities, including brain and neurological function, thinking, self-care, and the regulation of major bodily systems, manifesting in acute withdrawal symptoms that impaired his

ability to care for himself, communicate effectively, and remain safe without medical support. (Pltf. Opp. at 22.)

Plaintiff further argues that the d\Defendants failed to provide reasonable accommodations by failing to observe, monitor, or evaluate Russell's withdrawal symptoms, failing to place him on suicide watch despite knowing the withdrawal-related risks, delaying a response to an immediate medical referral by six hours, and failing to provide proper withdrawal management. (*Id.*) Plaintiff relies on the Department of Justice's position that substance use disorder is a disabling condition under the ADA and that public entities such as jails and prisons must provide the medical care and prescriptions needed to treat the disorder. (*Id.*) Upon review, the Court agrees with the County Defendants.

As to the first element, the County Defendants correctly note that the Complaint fails to allege facts showing that Russell's opioid use disorder substantially limited one or more major life activities during the relevant time period, or to identify which major life activities were substantially limited. The allegations actually pleaded in the Complaint—pain, an upset stomach, nausea, and Russell's subjective statement to his wife that "something was not right"—are insufficient to plausibly allege a disability within the meaning of the ADA because the Complaint neither identifies a major life activity that was substantially limited nor alleges facts showing that these symptoms substantially impaired any such activity. *See Louis*, 152 F. Supp. 3d at 150.

Critically, the more detailed allegations regarding substantial impairment of major life activities appear for the first time in Plaintiff's opposition brief and are found nowhere in the Complaint. It is well settled that a plaintiff may not amend the Complaint through opposition briefing. *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989). The Court may only consider what is actually pleaded in the Complaint, and what is pleaded on this

point is insufficient to establish that Russell was a qualified individual with a disability within the meaning of the ADA.

Even if the first element were satisfied based on the facts pleaded, which it is not, Plaintiff fails to satisfy the third element because the Complaint does not identify any specific WCJ service, program, or activity that Russell was denied access to or the benefits of by reason of his disability. The allegations throughout the Complaint describe failures in medical screening, withdrawal assessment, mental health monitoring, and suicide prevention. Those allegations, even accepted as true, describe inadequate medical care rather than discrimination or denial of accommodation on account of a qualifying disability. Inadequate medical treatment, without more, does not state a claim under the ADA or the Rehabilitation Act. *Elbert v. New York State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 596 (S.D.N.Y. 2010).

Because Plaintiff has not identified any specific service, program, or accommodation that Russell was denied because of his disability, as distinct from the general failures in medical care alleged throughout the Complaint, Plaintiff fails to satisfy the third element and thereby fails to state a claim under the ADA or Rehabilitation Act. Accordingly, Plaintiff's ADA and the Rehabilitation Act claims against the Moving Defendants are dismissed without prejudice.

**IV. State-Law Claims**

Plaintiff also brings claims sounding in negligence, medical malpractice, wrongful death, conscious pain and suffering, loss of familial association, negligent infliction of emotional distress, and negligent retention, supervision, and discipline under New York State law. Having dismissed Plaintiff's Section 1983, ADA, and Rehabilitation Act claims against the Moving Defendants, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *Rodriguez v. Westchester Cnty.*, No. 23-CV-5265 (NSR), 2025 WL 1939292, at *3 (S.D.N.Y. July

15, 2025) (noting that a district court "may decline to exercise supplemental jurisdiction over a claim" where it "has dismissed all claims over which it has original jurisdiction") (quoting 28 U.S.C. § 1367(c)). Accordingly, Plaintiff's state law claims against the Moving Defendants are dismissed without prejudice.

**V. Wellpath Bankruptcy Court Order**

Although the Court dismisses the federal claims against Wellpath LLC on pleading grounds and declines to exercise supplemental jurisdiction over the state-law claims, the Court briefly notes the Bankruptcy Court Order raised by the Wellpath Defendants in their reply memorandum of law. (ECF No. 65-1.) The United States Bankruptcy Court for the Southern District of Texas entered a Revised and Amended Clarifying Order in In re Wellpath SF Holdco, LLC, Case No. 24-90566, enforcing the Wellpath Plan and Trust Distribution Procedures. Courts may take judicial notice of public court orders for their existence and legal effect. See *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

The Bankruptcy Court Order appears to provide that holders of prepetition personal-injury or wrongful-death claims may proceed in civil court with the Wellpath Liquidating Trust included as a nominal defendant but may not proceed directly against Wellpath LLC or any other Debtor or Post-Restructuring Debtor absent Bankruptcy Court relief for insurance purposes. The Court notes the Order only as to Wellpath LLC and does not apply it to NYCCS or the individual Wellpath medical defendants because the present record does not clearly establish that those parties are Debtors, Post-Restructuring Debtors, or otherwise protected by the Order[2]. Because the Court dismisses the federal claims against Wellpath LLC on pleading grounds and declines to exercise

[2] The Court notes the Bankruptcy Court Order only as to Wellpath LLC. The present record does not establish that NYCCS or the individual Wellpath medical defendants are Debtors, Post-Restructuring Debtors, or otherwise protected by the Bankruptcy Court Order. Accordingly, the Court does not apply the Bankruptcy Court Order to those defendants and instead analyzes the federal claims against them on the merits.

supplemental jurisdiction over the remaining state-law claims, the Court need not decide whether the Bankruptcy Court Order independently bars any state-law claim against Wellpath LLC. Any amended pleading against Wellpath LLC must account for the Bankruptcy Court Order.

**VI. Leave to Amend**

"Generally, leave to amend should be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Philip Morris Cos*., 470 F.3d 481, 491 (2d Cir. 2006).

Here, the Court finds that leave to amend is warranted as to Plaintiff's Section 1983 deliberate indifference claims against the individual defendants, the *Monell* and entity liability claims, and the ADA and Rehabilitation Act claims. Plaintiff may be able to cure the deficiencies identified herein by pleading defendant-specific facts showing what each defendant knew, when each defendant knew it, what each defendant failed to do, and how that failure caused Russell's injuries and death. Any amended complaint asserting *Monell* claims must identify a specific policy or custom, plead facts supporting policymaker awareness, and allege a causal link to Russell's death.

Any amended complaint as to the ADA and Rehabilitation Act claims must plead facts establishing how Russell's alleged disability substantially limited one or more major life activities during the relevant period and must identify the specific WCJ service, program, or activity he was denied access to by reason of that disability. Should Plaintiff seek to replead claims against Wellpath LLC, Plaintiff must also account for the Bankruptcy Court Order entered in *In re Wellpath SF Holdco, LLC*, Case No. 24-90566 (Bankr. S.D. Tex.).

## CONCLUSION

For the foregoing reasons, the County Defendants' motion to dismiss (ECF No. 59) is GRANTED and the Wellpath Defendants' motion to dismiss (ECF No. 62) is GRANTED. Plaintiff's Section 1983 deliberate indifference claims against the individual County Defendants, and the individual Wellpath medical defendants are dismissed without prejudice. Plaintiff's Section 1983 *Monell* and entity liability claims against Westchester County, Wellpath LLC, and New York Correct Care Solutions Medical Services, P.C. are dismissed without prejudice. Plaintiff's ADA and Rehabilitation Act claims against the Moving Defendants are dismissed without prejudice. Plaintiff's state-law claims against the Moving Defendants are dismissed without prejudice to refiling in state court. This Opinion and Order does not resolve any claims asserted against Dr. Park.

Plaintiff is granted until August 31, 2026, to file an amended complaint curing the deficiencies identified herein as to her federal claims against the Moving Defendants. Failure to file an amended complaint by August 31, 2026 will result in dismissal of the federal claims dismissed herein with prejudice without further notice. If Plaintiff timely files an amended complaint, the Moving Defendants shall answer or otherwise respond within twenty-one days of its filing. Plaintiff's state-law claims against the Moving Defendants remain dismissed without prejudice to refiling in state court. The Court respectfully directs the Clerk of Court to terminate the motions at ECF Nos. 59 and 62.

SO ORDERED:

Dated: July 21, 2026
White Plains, New York

NELSON S. ROMÁN
United States District Judge